David Weiner, Counsel for the Appellant, B.P. This case involves an important question about the interpretation and application of the Deepwater Horizons Agreement, namely, whether the settlement program is required to obtain accurate and complete information to determine, make the critical determination about whether the same accounts are classified as fixed or variable in both the benchmark and compensation periods after a claimant makes a change in its accounting systems. Here, even though the claimant made that change in the critical month of May 2010, which resulted in a significant increase in the number of accounts in the compensation period relative to the benchmark, the settlement program never obtained information that would allow it to map or reconcile those accounts across the two different time periods. As a result of that failure, the settlement program had no way to know how and where accounts that were in the May to December 2010 time period were accounted for in the pre-spill benchmark period. And as a result of that, there is no way either for B.P. or the settlement program to know whether the difference in variable profit was properly calculated between the benchmark and compensation periods, and therefore, whether or not the settlement program accurately calculated the award to this particular claimant, approximately $15 million. Well, Mr. Weiner, help me with this. The point is certainly an important one, and you have a very strong case that you can rely on to some extent, Texas Gulf Seafood, where Judge Jones really goes through some of the mechanics that show the problems of not being more accurate and the listing of the expenses. But as I understand, at least the presentation that your friends on the other side are making, is that this was looked at, at least by some of the appeal panels, that this was addressed, that ultimately there is some sense that I'm having is that the argument is that whatever problems along the lines that you're raising are fairly minor and apply to only a few accounts in the scheme of things, do not make the kind of significant difference or even reasonably important difference in this case, as it did in Texas Gulf Seafood. So tell me why that's wrong. Sure, Your Honor. So it is absolutely not the case that the settlement program had before the information it needed to reconcile the accounts. And I'm happy to run through that, and I will do so. The nub of the problem here is that the change that occurred in May 2010, when the claimant adopted this new accounting system, had a profound impact on the granularity of reporting of accounts. And you can see this in very stark terms. For each of the five stores, there is roughly a doubling in the number of accounts in the compensation period, as compared to the benchmark. And so the question is, for each one of those accounts in the pre-spill benchmark period, where are the substantive parts of those accounts, where are those expenses actually going in the post-spill compensation period? That's what we don't know. So we have the example of these tire accounts. And I think it's just information that the claimant contends that the settlement program had before it. So let's take these three tire accounts as our examples. In the pre-spill benchmark periods, you have two accounts. There's a tire account, and then the other one is a trailer parts account. In the compensation period, those two accounts are gone. And we now have a brand new account called trailer tires. So the question that we have here is, did all of the expenses that originally were recorded in those two pre-spill accounts, tires and trailer parts, did they all go into this new trailer tires account? We just don't know. And BP was able to highlight this set of accounts because there was a very stark aspect to it, which is that the pre-spill tire accounts were classified as fixed, and the post-spill account was classified as variable. And so we brought that to the attention of the settlement program in the appeal panel stage. And the claimant said, well, look, we don't agree or disagree, but let's just do it, and the whole problem will go away. So even today, we still don't know whether, for example, the entirety of the trailer parts account from the pre-spill period was moved into the trailer tires account. It's possible that that's what happened. We don't know. We don't know what size of the impact, if any, that would have on the overall calculation of the award. It's possible that there's some other post-spill account other than trailer tires that has some of the expenses from the trailer parts or tires account. We simply don't know. Let me ask you, as to that specific example, and my understanding is it was raised as an example in the settlement appeal panel stage because it was an obvious one, is that particular concern mooted by what happened? And the problem is how pervasive the overall effects were of this change? Right. So what happened there, as I said, is that the claimant said, well, we don't agree or disagree with BP's characterization. And to be clear, BP doesn't actually know if those are all the same expenses. We don't have that information to be able to do that. But by saying, by the claimant saying, well, let's agree to treat these pre-spill accounts as variable, that essentially means that on both sides of the May 2010 date, the accounts are being treated the same. We suspect it probably resolves as to those, but we're actually not certain because you can't be certain unless there is a comprehensive mapping or reconciliation of all the expense accounts, and that hasn't happened. So I think as a principle of settlement interpretation and application, the claimant doesn't dispute the idea that the accounts have to be treated the same, they have to be classified the same on both sides. In other words, if you classify something as fixed in the pre-spill period, it also, that same account has to be fixed in the post-spill period, otherwise you're not comparing apples to apples. So at that principle level, I don't think there's disagreement between the parties. Their only arguments, number one, is that BP hasn't identified other examples other than these tire accounts. That puts the cart before the horse. We simply don't have that information, neither does the settlement program. The only one who has that information is the claimant, and there is no doubt that they have it. It's sitting on their servers in their corporate headquarters, and we know that because their accountants had to figure out how they were going to migrate these accounts from April 2010 to when they unveiled this new accounting system in May 2010. They must have hundreds of accountants, probably just about as many as who are working on the Deepwater Horizon settlement, to figure these things out. And this is, so they have this information. So that's one of their arguments. Saying that, do they disagree? It's one thing to have the data, and they can respond to this too, but as part of what was presented in the settlement process and appeal panel, is that after this change, we really can't put Humpty Dumpty back together again. We can't show you what all this would have looked like under our previous accounting or show the settlement program how all this would have looked. I mean, has there been a pushback from Walmart in part because it is not feasible to reconstruct all of this? Your Honor, I think it is. I don't know the basis. Because of what you think. I'm trying to say, has that been an argument that's been, in front of the appeal panel and otherwise? I don't know that feasibility has really been argued. I think it's more an issue of BP hasn't identified anything other than the tire accounts. And if that's going to be the standard, then what they're really advocating for is essentially a one-way ratchet, where when you have a change in accounting systems, it can only benefit claimants and it can only hurt BP. Because BP is never going to be in a position where it has the information needed to be able to make a decision. So that's where the accounting change resulted in a misclassification. The only other arguments that they have, as Your Honor alluded to, is this contention that the settlement program actually considered this. But when you look at the specific documents they're relying upon, that's not at all what those show. So you can start, for example, with these calculation notes. These are the notes that the program accountants used with their calculation to explain some of the decisions that they made. And this is at, in the BP record, this is at, starts at page 90. And it's just a couple of pages of notes. And note 7 is where things sort of start off. And this note indicates that the claimant brought this change to the attention of the settlement program. And then it essentially just says, we find that due to the BEL methodology that there's no impact. But they don't explain how they reached that conclusion. You follow down, and you've got these other calculation notes. They've got one note that talks about the COGS and says, well, we looked at the COGS, and we think everything is fine. But with respect to that, of course, if they had done a comprehensive analysis, reconciling the accounts on both sides of the time horizon, it begs the question of why the settlement program accountants didn't identify these tire accounts, where there not only were changes in accounts, but one of them ended up being treated as COGS and being treated as variable on one side and fixed on the other. You get to calculation note 10. And this is one of the ones that they rely on very heavily, because it talks specifically about non-COG expense accounts. But what this note actually indicates is that the settlement program accountants identified four or five sets of accounts in the pre-spill period and the post-spill period that had similar sounding names. And so the accountants said, well, we're going to group these together and treat them as the same, these sets of four or five accounts. So number one, this doesn't indicate that the accountants actually went to the claimant to figure out if these things are the same. Number two, it does not provide an analysis of accounts that we contend is required in order to accurately calculate what happened. That leaves the remaining calculation notes, I think it's maybe 11 through 14 or 15. And all that these do is they just perform the type of analysis that essentially is required under Texas Gulf, which is to say it's program accountants reaching out to the claimant saying, here is this category, explain to us what this is so we can determine if it's fixed or variable. But what it does not do is make any attempt to identify whether a particular account in the post-spill period came from another particular account in the pre-spill period to then conclude that they are being treated in the same way on both sides. So these calculation notes don't remotely come close to addressing the analysis or providing the information that was required to accurately make an assessment of the impact of the accounting change. The other document that they rely very heavily on is this memorandum chart that they submitted to the program, I think it was at the CSSP stage, this reconciliation memo and chart. And this is in, I think it's in both parties' records, it's in our record, I think starting at page 104, 103. And this, again, does not perform the reconciliation or mapping of expenses that is required. And I think the chart itself is the starkest example of it, because what the chart actually shows is that the claimant was trying to group accounts into different categories. Are they variable costs? Are they revenue? What are they? Of course, the settlement program accountants are the ones who are supposed to be making those determinations, not the claimant. But the more important point is, is that this pre-spill, the post-spill periods. And I think if you look at this chart, and you look at, for example, the section on repair expenses, in the pre-spill period, they have five expenses, five accounts. In the post-spill period, they have something like 28 or 29 accounts. And what, again, what this does not do is to provide an explanation or analysis to show, are they saying that these five repair categories migrated into these 28 categories after the spill? We simply don't know. It certainly doesn't say it in that document. One of the categories in the post-spill period is like pest control expenses. Well, where was that before the spill in the pre-spill period? That document doesn't tell us that. The settlement program never had that information. The final thing that they point to are the email colloquies between claimant's counsel and PWC auditors. Once again, this is really just fulfilling the Texas Gulf analysis. It's providing detailed information about expense accounts without actually addressing how they were accounted for in the pre-spill period as compared to the post-spill. We think that there was a significant misapplication. There is a panel split with 28, 13, 61. Both of those reasons are sufficient grounds for this court to conclude that the district court was required to exercise review. If there are no other questions at this time, I'll reserve for rebuttal. Thank you. Good morning. May it please the court. Trey Peacock on behalf of Apelli Wal-Mart Stores East. Your honors, this is a straightforward case. The district court did not abuse its discretion when it denied BP's unsubstantiated claims. It is important to note that in their original brief, BP admitted that what they were asking for was to require Wal-Mart to provide tracing information for each substantive expense. That's at page 19 of their brief. And that has already been done, your honors. As I will explain in a bit more detail shortly, 98 to 99 percent of the variable expenses in these stores comes from costs of goods sold, which is essentially one account in both the pre- and post-May 2010 period. The present expense categories, many of which are small or even zero. BP is not arguing, as best we understand, that there was error in the cost of good calculation, and they cannot, because even as Mr. Weiner just noted, PWC's work papers show that Wal-Mart provided a tracing for the handful of accounts involved in costs of goods, and that PWC reviewed and documented its work on that point in note 7. There is no substantive expense category, which is the standard they seek, that wasn't already reviewed by Prosswater House Coopers in detail, and that was, excuse me, in detail on that account was provided by Wal-Mart. Instead, what BP is arguing for is a level of reconciliation detail that finds no support in the settlement agreement, and the standard they seek to impose of substantial expense has, in fact, already been satisfied because of the unique and specific claims for these five Wal-Mart stores. It's not surprising, if you simply step back and think of a Wal-Mart store, that the largest category of expense are the goods they buy and place on the shelf for their customers to purchase. Counsel, with what specificity was the accounting information turned over to the claims handling process at the outset? Pursuant to Exhibit 4D, Your Honor, of the settlement agreement, the one setting aside some federal tax returns and sales tax issues, as related to financials, Wal-Mart was obligated to provide the settlement administrator with monthly and annual profit and loss statements that showed at the expense and revenue category level, and we did that in full, and there's no question we did that. You can look all through Exhibit D as far as they like, Exhibit 4D, and you will find nothing regarding the requirement they now seek to impose upon us of detailed reconciliation of every single account. You will find no support for that in the settlement agreement. That would be simply a new grafting of a requirement upon us as a claimant. Don't you have that support, to some extent, in Texas Gulf Seafood? They do, not you. The kind of specificity to make sure that we are comparing apples to apples when we're talking about costs. Yes, and what the Court said in Texas Gulf Seafood, it is clear from the work papers of PricewaterhouseCoopers, it satisfied. In that case, forgive me one second, the Court noted that it's the claims administrators are, quote, to use their independent judgment and classify expenses as fixed or variable according to their substantive nature. And it is clear if you go and look at the work papers that they, in fact, did that. They asked us about a lot of what are incredibly small accounts as to what they made up, what they were, was there any tie to variability based on sales, were they fixed. In Exhibits 4 and 5, there's a whole series of questions back and forth. In Tab 2 of our record excerpts, there's the calculation notes, and I'm going to come back to those in a minute because of something my opponent said. But also, there is the actual work papers. You can go through, they're very extensive documents in the record, they're laid out at page 11 in our brief. But PricewaterhouseCoopers took our financials row by row for every single expense category and made the independent judgment that is required under Texas Gulf Seafood and looked at it and categorized it, said it was variable, said it was variable for cost of goods, said it was fixed, said it was payroll, all of the categories as required in Exhibit 4 to the settlement agreement. And they applied their independent judgment as they were required to and they made their decisions. But when you go and look at those underlying documents, you will find it's one category. You can look at it total for 2009, total for 2010 in the financial documents. Cost of goods sold is essentially one row. Some instances there's some smaller minor rows, but in a given store, for example, in Tab, the example we gave in Exhibit Tab 2 for one of the stores, the total cost of goods in a given Walmart store ranges between $70 and $85 million a year. That's substantive. What makes tires, trailer parts, trailer tires different if it was different? I mean, that has been presented to us as an example of the kinds of problems that change in accounting systems at Walmart led to. Is it unique or was it not a problem in the first place and you just conceded it? Sort of respond to how is that an exemplar? Why is that not an exemplar of wider problems? Several reasons. First, the fact that they identified those and the fact that they identified, there were others they identified that we agreed to in the appeals process when they raised it. On those three, they identified those and we accepted them. More importantly, when they raised those, they said nothing to satisfy the standard they now seek of substantiveness by addressing what was the impact. They say they can't do it. They could absolutely do it. They have the spreadsheets and they can do exactly what we did to the appeals panels. We said, without agreeing or disagreeing, because these accounts are so small. Some of them are, in one year for one store, there is nothing for trailer parts. It's an account, but it's zero, is the effect of the changes when we ran the calculations and gave them back. VPs had every opportunity to look at the spreadsheets. They have not suggested there was an error. The effect of those changes for those three accounts ranged from $100 to $5,000, less than one-tenth, in the largest case, of 1% of the total award. Those accounts are not substantive. 98 to 99% is in one account. So either it's going to be $1,000 or $1,000 or $1,000. It's going to be a new standard, a standard where they say, you have to trace every single expense. There is no support for that in the settlement agreement. In the cases that they have relied on, and as Your Honor has pointed out, Texas Gulf Seafood, there is nothing in that opinion involving that. In both Texas Gulf Seafood and this case that I have to use a very long claim number for, from April 2019, that both Texas Gulf Seafood, Your Honor, Judge Southwick, and Judge Engelhardt were on involving motor vehicles, claimant 1001-95328. In both of those cases, there were specific examples brought to the attention of the Court that had specific and significant impacts, but they had been identified. In Texas Gulf Seafood, it was that there was a supply category where both sides did not dispute that something like 40% of that number was variable. And the question was, well, they didn't call it, they called it supplies, and the Court ruled you look at the substantive nature of the expenses, which is exactly what the claims administrator, PricewaterhouseCoopers in this case, did with us on a series of accounts. If you look at the calculation notes, they include some larger number items than the tens of thousands of dollars for allowance for accidents, for credit card charges that they wanted to understand how it compared across periods. In the motor vehicles case, the question again was, they purchased vehicles and treated that as a cost and then sold them and didn't match the revenues. In that case, one, again, a specific example with a specific known impact that represented a pressing issue under the settlement agreement that they were perfectly able to identify and that the Court determined working off of the actual language in the settlement agreement required matching of expenses to revenue. Here, there is no such example. It is purely hypothetical and conjectural, and there is no articulable standard that we can understand that, A, derives from the settlement agreement, and, B, would actually be a meaningful standard that wouldn't result in anything other than an endless cycle of we need more detail, we give them more detail, BP comes right back again and says, still not enough. And that goes back to the initial point I want to make. What did we do? We were only obligated under this settlement agreement to provide the financial statements. We did that. We, on our own volition, the administrator did not come to us and ask for this initially. We did it to provide some helpful guidance voluntarily to the panel and prepared the three-page memo on reconciliation. In their initial briefing, BP made quite a point of saying we gave them nothing. Well, that wasn't true. They also argued that the administrator didn't do this. That's also not true. And now they say, well, they didn't do every single account, and we don't dispute that we did not provide a reconciliation for every single account. There are many accounts that are zeros. There are many accounts that under the settlement agreement aren't part of the analysis. What we attempted to do at our best as we could, looking back so it's clear 10 years to an accounting change done in 2010, was to give them the detail and reconciliation for the accounts that, based on Exhibit 4, I said 4D earlier on the document requirements is 4A. 4D has the categories of expenses. And we did our best to provide a roadmap of which ones matched up to which, revenue, cost of goods, variable expenses. So we went out of our way to do that, and then once we did that, the administrator's work papers show first, they asked a lot of questions. I personally participated in several phone calls with Walmart financial individuals where they asked us questions, PricewaterhouseCoopers accounts, about various accounts and how they changed over periods and what made them up and did they have variability in them or not. And that is reflected both in the email exchanges that we've included at tabs four and five. It's also reflected in their work papers. And I want to talk about one misstatement I believe that was made. And it's important because it's made throughout the brief. There's been a lot of talk about tab, excuse me, note seven in the calculation notes. In a particular context where the PricewaterhouseCoopers wrote changes in presentation made to those accounts would not have an impact on the calculation. And they point to that and say there's no basis and they didn't look at what they were supposed to. You actually need to read the two sentences before that. What the PricewaterhouseCoopers wrote is the claimant contributed the largest changes to the presentation of revenue and cost of goods sold, which are the first two sections on the reconciliation memo we sent with every single claim. The second sentence, a separate review of the changes made to these accounts are included in the calculation notes below. And they go on to say changes in presentation made to those accounts would have an impact. The only thing the PricewaterhouseCoopers was talking about in note seven were cost of goods accounts and the revenue accounts, which they proceed to discuss in notes eight, nine, and ten. It doesn't say anything about them, the other variable expense categories, but the notes make clear, notes 11 through 16, that there's a whole variety of accounts that they looked at across periods. And if you look at those notes and you look at the email exchanges back and forth, there is a correlation there. They were asking us the hard questions to determine the substantive nature of the expense. We provided them information in response to that and they made their decisions. And they were not always the decisions that we had made. They were frequently different. But they made the decision and that's the obligation that they are vested with. The last area I want to briefly discuss, Your Honors, is, well, first is, because we're talking about something that is so small and in fact conjectural, this does not raise under the first prong for this court's review, standard of review, that this creates a pressing issue of interpretation and implementation of the settlement. It has to be something. It has to be something significant and pressing. And here, they, even the tiny three accounts they did identify, were infinitesimally small in the scheme of this calculation. Infinitesimally small. Assuming they were even mishandled, which you may be wondering, why didn't we try to cipher that out? But under the program that they set up, you only get a handful of pages, I think it's five double-spaced pages, to address all the issues they raised. There were a number of other issues. We had less than a page to address this issue. It was simpler simply to say, we'll give it to you, without getting into it, than to go through the detailed analysis that that would have required. But they've also suggested that there's a second basis, which is a split in the appeals panels. They have acknowledged that there are plenty of appeal decisions where the court has, the panels have acknowledged that the level of reconciliation they're seeking has no support in the settlement agreement. Instead, what they suggest is that there's a split on that question by citing the 1361 decision. But if you go and look at that decision, there's nothing about, you must go and reconcile every single account. There's nothing that says that. So there is no split. But it's also consistent with what has happened in Texas Gulf Seafood and the motor vehicle cases, which is, if you've identified specific examples, and you can raise the issue and identify them, and they're significant, then you can remand them back. None of that is present here, Your Honors. So if there are no other questions, we would respectfully request that the decision of the district court be approved. Thank you, Your Honors. Your Honor, this case builds on the principle the court identified in Texas Gulf. Texas Gulf, as the court knows, stands for the proposition that program accountants must classify expenses not based on how they're categorized by the claimants, but based on their substantive nature and using their independent judgment. Almost everything that the claimant is talking about here, their colloquies with the program accountants, the calculation notes, the reconciliation ledger, all of these things are addressing the, almost all of them are addressing the Texas Gulf issue. They're addressing what are the substantive natures of these specific expense accounts so that program accountants can determine are they fixed or are they variable? What they continue to overlook and what the settlement program never did was make any attempt to figure out what happened after the accounting change in May 2010. You have these expense accounts in the pre-spill period before May 2010. You have for each store about 72 to 74 accounts. After the spill in the May to December 2010 period, the amount essentially doubles in size for each store. And the question that they still have no answer for is what happened with each of those accounts? Where did the expenses actually go from tires and trailer parts before the spill to trailer tires after the spill? We still don't have answers to any of those questions. They say, well, this isn't substantive because it's all COGS anyway. Well, agreed. For this particular claimant, a large portion of expenses are found in the COGS category. I don't know how they... You don't, you agree you're talking about the correctness of one administrative decision as regards one claimant in one case. Isn't that what we're talking about? So I don't, I would disagree with the characterization of it being the correctness of a single classification. This is, and I think the easiest way to see that, Your Honor, is we have no idea what the outcome will be. Well, you agree we're talking about one claimant. Well, there are five claims because there are five... No, one claimant. I'm sorry, maybe you didn't hear me. Yes, this is one claimant. We're talking about a single claimant. That's correct. And we have identified 2018-1361 that has the similar issue in it. We have their only response to it was, well, there they identified specifically the accounts that they think were misclassified. Of course they did. That was an appeal by a claimant. The claimant has the information. And that, I think, gets to the heart of why what we're identifying here is an interpretive issue as opposed to a mere fact issue. That's where I'm headed is, tell me why Texas Gulf doesn't counsel against granting discretionary review in a case like this with one claimant, a decision about how you're going to classify a certain category of claims. It sounds like that's what Texas Gulf says is the kind of case where discretionary review is denied. It's not an abuse of discretion. Well, I don't think that this court has ever said that just because it is a single claimant and there's a single issue, that that would be grounds to say that the district court doesn't have to exercise review. And I refer your honor to this court's decision. Well, so that also means it's not likely to come up again, to reoccur. We just don't know. If an issue is likely to reoccur, then it's more likely that discretionary review should be granted. You agree with that? Well, possibly. But number one, we don't know what claims remain at the CSSP level. It could be a lurking issue. And number two, when this court has analyzed that prong of the standard, it has always- Which is speculating that it could be a lurking issue. But that's always the case, your honor. That's how this court has always done it. Just last week or two weeks ago, this court reversed in favor of a claimant and remanded without attempting to predict whether the issue was going to arise again. And here, while it's true that a large number of the expenses are in the COGS category, I don't know where they get the figure that it's 99%. We have different calculations. And I guess that gets back to the point that the settlement program, they're the ones who should be making this determination. Will this have an impact on the bottom line? I don't know. The settlement program doesn't know. Presumably, the claimant knows because they have the information. But when you look at the documents that they're referring to, at best, they address the Texas Gulf issue. They do not address the reconciliation of accounts from before and after they change. And while I understand your honor's question that this may seem like a narrow issue, it can't be the case that we're just going to throw up our arms and say, it's close enough. That's not how this court has approached these interpretive questions when they have arisen in the past. There are no further questions we would ask that the court reverse and remand. Thank you, your honors.